**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| EMERSON BRADLEY, individually, and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION,<br><br>Defendant. |

Civil Action No. 1:22-cv-03442-RBW

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    I.      Statutory and Regulatory Background ................................................................... 2

    II.     Factual Background ............................................................................................... 5

    III.    The Complaint ...................................................................................................... 7

LEGAL STANDARD ........................................................................................................... 9

ARGUMENT ...................................................................................................................... 11

    I.      PLAINTIFF'S CLAIM FOR EQUITABLE AND INJUNCTIVE RELIEF IS MOOT AND SHOULD THEREFORE BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION ................................................................ 11

    II.     THE COURT SHOULD DISMISS PLAINTIFF'S DAMAGES CLAIM FOR FAILURE TO STATE A CLAIM ...................................................................... 14

          A.     The Complaint Does Not Plausibly Allege Damages Claims For Violations Of The Privacy Act's Requirements That An Agency Maintain Accurate Records ........................................................................ 15

               1.     § 552a(e)(5) ................................................................................. 15

               2.     § 552a(e)(1) ................................................................................. 21

               3.     § 552a(e)(2) ................................................................................. 23

               4.     § 552a(e)(6) ................................................................................. 24

          B.     The Complaint Does Not Plausibly Allege A Damages Claim For Violation Of The Privacy Act's Prohibition on Unauthorized Disclosures .................................................................................................. 25

          C.     The Complaint Does Not Plausibly Allege A Damages Claim For Violation Of The Privacy Act's Failure To Establish Safeguards Provision ................................................................................................... 27

CONCLUSION ................................................................................................................... 28

# TABLE OF AUTHORITIES

## CASES

*Abu Ali v. Gonzales*,
  387 F. Supp. 2d 16 (D.D.C. 2005) ........................................................ 9

*Albright v. United States*,
  732 F.2d 181 (D.C. Cir. 1984) ........................................................ 14, 27

*Alexander v. FBI*,
  691 F. Supp. 2d 182 (D.D.C. 2010) ........................................................ 27

*Am. Bar Ass'n v. FTC*,
  636 F.3d 641 (D.C. Cir. 2011) ........................................................ 13

*Arizonans for Official English v. Arizona*,
  520 U.S 43 (1997) ........................................................ 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................ 10, 21

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002) ........................................................ 10

*Chavis v. Garrett*,
  419 F. Supp. 3d 24 (D.D.C. 2019) ........................................................ 12

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000) ........................................................ 11

*Clarkson v. IRS*,
  678 F.2d 1368 (11th Cir. 1982) ........................................................ 21

*Colley v. James*,
  254 F. Supp. 3d 45 (D.D.C. 2017) ........................................................ 19

*Delta Air Lines v. Export-Import Bank of U.S.*,
  85 F. Supp. 3d 250 (D.D.C. 2015) ........................................................ 10

*Deters v. U.S. Parole Comm'n*,
  85 F.3d 655 (D.C. Cir. 1996) ........................................................ 15, 16

*Dick v. Holder*,
  67 F. Supp. 3d 167 (D.D.C. 2014) ........................................................ 27

*F.A.A. v. Cooper,*
   566 U.S. 284 (2012) ................................................................................ 20

*Fendler v. U.S. Bureau of Prisons,*
   846 F.2d 550 (9th Cir. 1988) ................................................................... 15

*Fletcher v. United States,*
   No. 11-cv-1943, 2013 WL 5422951 (D.D.C. Sept. 30, 2013) .................. 12

*Foretich v. United States,*
   351 F.3d 1198 (D.C. Cir. 2003) ............................................................... 11

*Gard v. U.S. Dep't of Educ.,*
   789 F. Supp. 2d 96 (D.D.C. 2011) ........................................................... 24

*Grand Lodge of Fraternal Order of Police v. Ashcroft,*
   185 F. Supp. 2d 9 (D.D.C. 2001) ............................................................. 10

*Harris v. D.C. Water & Sewer Auth.,*
   791 F.3d 65 (D.C. Cir. 2015) ................................................................... 10

*Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n,*
   628 F.3d 568 (D.C. Cir. 2010) ................................................................. 13

*In re Dep't of Veterans Affs. (VA) Data Theft Litig.,*
   No. MDL1796, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) .................... 22

*In re Howard,*
   No. 13-5261, 2014 WL 4628254 (D.C. Cir. July 14, 2014) ..................... 12

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.,*
   928 F.3d 42 (D.C. Cir. 2019) ........................................................ 20, 27, 28

*J.D. v. Azar,*
   925 F.3d 1291 (D.C. Cir. 2019) ............................................................... 14

*Kelley v. Fed. Bureau of Investigation,*
   67 F. Supp. 3d 240 (D.D.C. 2014) ..................................................... 12, 25

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) .................................................................................. 9

*LaRoque v. Holder,*
   679 F.3d 905 (D.C. Cir. 2012) ................................................................. 11

*Leonard v. U.S. Dep't of Def.*,
   598 F. App'x 9 (D.C. Cir. 2015) ........................................................................... 13

*Los Angeles Cnty. v. Davis*,
   440 U.S. 625 (1979) ............................................................................................. 13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................. 11

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ............................................................................................... 10

*Maydak v. United States*,
   630 F.3d 166 (D.C. Cir. 2010) ...................................................................... 16, 23

*Muhammad v. FDIC*,
   751 F. Supp. 2d 114 (D.D.C. 2010) ...................................................................... 9

*Nat'l Treasury Emps. Union v. Whipple*,
   636 F. Supp. 2d 63 (D.D.C. 2009) ...................................................................... 10

*Plummer v. Safeway, Inc.*,
   934 F. Supp. 2d 191 (D.D.C. 2013) ............................................................. 10, 18

*Ramirez v. Dep't of Just.*,
   594 F. Supp. 2d 58 (D.D.C. 2009) ...................................................................... 17

*Rann v. Chao*,
   154 F. Supp. 2d 61 (D.D.C. 2001) ...................................................................... 10

*Reed v. Dep't of the Navy*,
   910 F. Supp. 2d 32 (D.D.C. 2012) ................................................................. 25, 27

*Sieverding v. Dep't of Just.*,
   693 F. Supp. 2d 93 (D.D.C. 2010) ...................................................................... 21

*Thompson v. Dep't of State*,
   400 F. Supp. 2d 1 (D.D.C. 2005) ................................................................. 14, 16

*Toolasprashad v. Bureau of Prisons*,
   286 F.3d 576 (D.C. Cir. 2002) ............................................................................ 14

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ......................................................................................... 22

*United States v. Philip Morris USA Inc.*,
 566 F.3d 1095 (D.C. Cir. 2009) ...................................................................... 11, 12

*Waters v. Thornburgh*,
 888 F.2d 870 (D.C. Cir. 1989) ............................................................................ 24

*Citizens for Resp. & Ethics in Wash. v. Wheeler*,
 352 F. Supp. 3d 1 (D.D.C. 2019) ........................................................................ 13

*Zevallos v. Obama*,
 10 F. Supp. 3d 111 (D.D.C. 2014) ......................................................................... 9

## STATUTES

5 U.S.C. § 552a ....................................................................................................... *passim*

15 U.S.C. § 1681s-2 ......................................................................................... 4, 17, 26

20 U.S.C. § 1070 ..................................................................................................... 2, 22

20 U.S.C. § 1078-2(a)(1)(A) ......................................................................................... 2

20 U.S.C. § 1080a(a) .............................................................................................. 4, 26

20 U.S.C. § 1087a-1087j .............................................................................................. 2

20 U.S.C. § 1087f(a)(1) ................................................................................................. 2

## FEDERAL RULES

Fed. R. Civ. P. 12 ............................................................................................. 9, 10, 14

## ADMINISTRATIVE AND EXECUTIVE MATERIALS

34 C.F.R. § 5b.12(c) ..................................................................................................... 21

34 C.F.R. § 682.208(a) .................................................................................................. 2

34 C.F.R. § 685.200 .................................................................................................. 3, 22

Dep't of Educ., Institutional Eligibility Under the Higher Education Act of 1965, as Amended;
 Student Assistance General Provisions; Federal Perkins Loan Program; Federal Family
 Education Loan Program; and William D. Ford Federal Direct Loan Program,
 87 Fed. Reg. 65,904 (Nov. 1, 2022) ...................................................................... 5

**OTHER AUTHORITIES**

*Creating and Using the FSA ID*, FSA (May 2021),
    https://perma.cc/VPN5-CLRD ............................................................................ 4

*Direct PLUS Loans and Adverse Credit*, Studentaid.gov (Mar. 2015),
    https://perma.cc/N77Q-J58S ............................................................................. 3

*Endorser Addendum to Federal PLUS Loan Application and Mater Promissory Note (MPN)*,
    U.S. Dep't of Educ.,
    https://perma.cc/7P3Q-SVY4 (accessed Mar. 6, 2023) ......................................... 3

*FSA ID/PIN Replacement - FSA ID Additional Information and Helpful Hints*, U.S. Dep't of
    Educ. (May 22, 2015),
    https://perma.cc/68WH-9K3L ............................................................................ 4

*I need help with an Endorser Addendum*, U.S. Dep't of Educ.,
    https://perma.cc/DG59-B3LB (accessed Mar. 6, 2023)......................................... 4

*New Form for Forgery Loan Discharge Process for ED-held Loans*, FSA (Feb. 12, 2020),
    https://perma.cc/FT3Q-C9MP ............................................................................ 5

*PLUS Loans: What to Do if You're Denied Based on Adverse Credit History*, Studentaid.gov,
    https://perma.cc/WZ6P-HM88 (accessed Mar. 6, 2023) ...................................... 3

*What Student Loan Information is Reported to Credit Agencies?*, Nelnet,
    https://perma.cc/2D6J-M8UZ (accessed Mar. 8, 2023)......................................... 6

**INTRODUCTION**

Plaintiff, Emerson Bradley, brings a broadside challenge to the United States Department of Education's (the "Department's") student loan fraud prevention and fraud relief procedures disguised as a claim under the Privacy Act of 1974, as amended ("Privacy Act"), 5 U.S.C. § 552a. Plaintiff is a victim of student loan fraud allegedly committed by his father, Lars Bradley, who allegedly forged Plaintiff's signature to secure Plaintiff's endorsement on multiple student loans issued to Lars Bradley from 2012 to 2020.  After Plaintiff learned about the fraud, he applied to remove himself as an endorser on the loans.  The Department granted the application and authorized Lars Bradley's loan servicer, Nelnet, to remove Plaintiff as an endorser from his father's loans.  Due to Nelnet's administrative error, Nelnet did not remove Plaintiff as an endorser from all of his loans until December 5, 2022, but that has undisputedly been done now.  Nonetheless, Plaintiff, on behalf of a putative class, appears to argue that the Department's fraud prevention and relief procedures on a programmatic level are insufficient.  His underlying theory appears to be, simply by accepting loan applications that later turn out to be fraudulent, the Department violates the Privacy Act.

Plaintiff's claim for equitable relief is moot because the Department corrected his record and the Privacy Act offers no other equitable relief relevant to his case.  With regard to Plaintiff's damages claim, the Act requires any alleged violation to be intentional and willful.  But Plaintiff's theory on its face defies a finding of willfulness because the Department did not know, prior to receiving and reviewing Plaintiff's notice to the Department of the forgery, that his father allegedly forged Plaintiff's signature.  And beyond this legal hurdle, Plaintiff's threadbare allegations cannot plausibly state a claim for any identified Privacy Act subsection, either because the Department

acted in compliance with the Act or because Plaintiff alleges facts insufficient to support the alleged violations.

At bottom, in pursuit of a class action, Plaintiff seeks to turn student loan fraud allegedly committed by his father into a Privacy Act violation committed by the Department.  Surely, Congress did not countenance this broad theory when it created the Privacy Act's narrow causes of action, cabined further by an intentional and willful requirement for damages claims.  The Court should therefore grant the Department's Motion to Dismiss the Complaint.

BACKGROUND

## I.      Statutory and Regulatory Background

The Department of Education administers federal student-aid programs under Title IV of the Higher Education Act of 1965 ("HEA"), as amended, 20 U.S.C. § 1070, *et seq.*  The federal student loan program currently consists of $1.6 trillion in loans, to 42.8 million borrowers.  *See* Compl. ¶ 3, ECF No. 2.  To manage the servicing of its $1.6 trillion loan portfolio, the Department contracts with loan servicers, who report to nationwide consumer reporting agencies (also known as credit agencies), respond to borrower inquiries, establish the terms of repayment, and report a borrower's enrollment and loan status information.  *See* 20 U.S.C. § 1087f(a)(1) (directing the Secretary to award federal loan servicing contracts "to the extent practicable"); 34 C.F.R. § 682.208(a).

One of the Department's student loan programs is the William D. Ford Federal Direct Loan Program ("Direct PLUS Loan"), 20 U.S.C. § 1087a-1087j, which is authorized under Title IV, Part D of the HEA.  The Department generally does not disburse Direct PLUS Loans to prospective borrowers with adverse credit histories.  It will do so, however, if a prospective borrower secures a third-party endorser who does not have an adverse credit history.  20 U.S.C. § 1078-2(a)(1)(A);

34 C.F.R. § 685.200(b)(5) (referring to 34 C.F.R. § 685.200(c)(2)(viii)); *PLUS Loans: What to Do if You're Denied Based on Adverse Credit History*, STUDENTAID.GOV, https://perma.cc/WZ6P-HM88 (accessed Mar. 6, 2023); *see also Direct PLUS Loans and Adverse Credit*, STUDENTAID.GOV (Mar. 2015), https://perma.cc/N77Q-J58S.  The endorser completes an Endorser Addendum, which is an Addendum to the Master Promissory Note ("MPN") signed by the prospective borrower.  The Endorser Addendum has a section in which the endorser provides various personal, identifying information, such as date of birth, Social Security number, address, and telephone number; a section describing the loan to which the endorsement applies; and a section in which the endorser provides certain certifications, authorizations, and promises to pay. *Endorser Addendum to Federal PLUS Loan Application and Mater Promissory Note (MPN)* ("Endorser Addendum"), 1, U.S. DEP'T OF EDUC., https://perma.cc/7P3Q-SVY4 (accessed Mar. 6, 2023); Bradley Endorser Addendums, attached hereto as Exhibit 1.

In this latter section, at the end of which the endorser signs the form, the endorser agrees to several conditions.  First, the endorser agrees that under penalty of perjury, the information contained in the first section of the addendum is true and accurate.  *Id.*  Second, the endorser authorizes the Department to investigate the endorser's credit record, which is necessary for the Department to determine that the endorser does not have an adverse credit history, and to report information about the endorser's credit to persons and organizations permitted by law to receive such information.  *Id.*  Third, the endorser agrees to repay the borrower's student loan under the terms and conditions of the borrower's MPN if the borrower does not repay the loan.  *Id.*

The endorser submits the completed, signed Endorser Addendum to the Department, either in paper or electronically.  In order to submit it electronically, the endorser must obtain a Department of Education Office of Federal Student Aid ("FSA") ID, consisting of a user-selected

username and password.  *FSA ID/PIN Replacement - FSA ID Additional Information and Helpful Hints*, U.S. DEP'T OF EDUC. (May 22, 2015), https://perma.cc/68WH-9K3L; *I need help with an Endorser Addendum*, U.S. DEP'T OF EDUC., https://perma.cc/DG59-B3LB (accessed Mar. 6, 2023).  To obtain the FSA ID, users must provide their first and last name, middle initial, date of birth, and Social Security number.  *Creating and Using the FSA ID*, FSA (May 2021), https://perma.cc/VPN5-CLRD.  FSA then attempts to verify the identity of the user by confirming that the information provided matches the information about the user on record with the Social Security Administration ("SSA").  *Id.*  If FSA makes the confirmation, it issues the user an FSA ID, which an endorser-user would use to submit the Endorser Addendum electronically.  *Id.* Conversely, if there is no confirmation, an FSA ID will not issue and the person will not be able to submit the Endorser Addendum electronically.  *See id.*  Submission of the Endorser Addendum by paper does not require an FSA ID, but the Department nonetheless attempts to verify the identities of endorsers who submit the Addendum by paper through the investigation of the endorser's credit record (which, as discussed above, the endorser consents to).

Once a loan has been issued to a borrower, the HEA requires the Department to disclose to consumer reporting agencies certain information about outstanding loans, such as the total amount of the loan and the remaining balance.  20 U.S.C. § 1080a(a).  In addition, the Fair Credit Reporting Act requires that information furnished to consumer reporting agencies be accurate and complete. 15 U.S.C. § 1681s-2.

On February 12, 2020, the Department created a new administrative process for addressing claims made by individuals that loans allegedly taken out by them are unenforceable due to forgery of their signatures.  Before this process, the Department's regulations provided only for discharges for forgeries committed by a school, or when there had been a determination of identity theft by a

court.  The new process allows any victim of a forgery, committed by someone other than a school, and/or committed without a court determination of identity theft, to raise and resolve a forgery claim with the Department.  *New Form for Forgery Loan Discharge Process for ED-held Loans*, FSA (Feb. 12, 2020), https://perma.cc/FT3Q-C9MP.

To utilize this new procedure, applicants submit a "Loan Discharge Application: Forgery," to their loan servicer.  *See, e.g.* Bradley Discharge Denial Letter of Sept. 28, 2021 ("Bradley Discharge Denial"), attached hereto as Exhibit 2.  The servicer reviews the discharge claim and all documentation, using a preponderance of evidence standard.  *New Form for Forgery Loan Discharge Process for ED-held Loans* ("totality of the evidence").  Servicer discharge denials can be appealed to the Department.  *See, e.g.* Bradley Discharge Denial.  As the Department explained in its announcement of the new application: the "application and any supporting evidence submitted will be considered in its entirety to determine whether the applicant has shown that his or her signature was not genuine.  If such demonstration is made, and if the applicant is determined not to have obtained any benefit . . . the Department will discharge the loan" (or, as pertinent here, discharge the applicant's obligation to pay the loan).  *New Form for Forgery Loan Discharge Process for ED-held Loans*.[1]

## II.    Factual Background

Plaintiff Emerson Bradley claims that from April 11, 2012 to June 23, 2020, his father, Lars Bradley, submitted a series of applications for federal student loans that falsely represented that Plaintiff agreed to endorse his father's loans.  Compl. ¶¶ 24-35.  Specifically, Lars Bradley

---

[1] In a new final rule promulgated on October 31, 2022, and effective on July 1, 2023, the Department similarly relaxed documentation requirements for victims of identity theft (not just forgery).  Dep't of Educ., Institutional Eligibility Under the Higher Education Act of 1965, as Amended; Student Assistance General Provisions; Federal Perkins Loan Program; Federal Family Education Loan Program; and William D. Ford Federal Direct Loan Program, 87 Fed. Reg. 65,904, 65,904-66,073 (Nov. 1, 2022).

fraudulently filled out and submitted Endorser Addendums in which he listed Plaintiff as the endorser; provided various personal information about Plaintiff, such as his Social Security number, date of birth, driver's license number, work phone number, and references; and forged Plaintiff's signature. *Id.*; Bradley Endorser Addendums referenced in those paragraphs. Plaintiff claims that the various Endorser Addendums contained indications of falsehoods—what he terms "identity theft." Compl. ¶¶ 25-34.

Plaintiff claims that he did not become aware of the fraudulent endorsements until after December 2020, when he was denied a credit card "because of records pertaining to the Fraudulent Loans that [the Department] reported about him to consumer reporting agencies." Compl. ¶¶ 36, 39. Nelnet, the loan servicer for Lars Bradley's loans, *id*. ¶ 43, reports information about the student loans it services to three major credit agencies, which determine credit scores for individuals. Nelnet provides various information about student loans to the credit agencies on a monthly basis, such as identifying information, terms of the loan, balance, and payment history. This may include information on an endorser who has joint contractual liability on the loan. *See Credit Reporting*, NELNET, https://perma.cc/2D6J-M8UZ (accessed Mar. 7, 2023) ("What Student Loan Information is Reported to Credit Agencies?).

On May 28, 2021, Plaintiff disputed the fraudulent endorsements with Nelnet by filing an application to remove his name as an endorser on his father's loans. Compl. ¶¶ 43-45. Around this time, he allegedly filed complaints about the fraud with a variety of other federal agencies as well as with his local sheriff's office. *Id.* ¶¶ 42, 46, 48. On September 28, 2021, Nelnet denied Plaintiff's application to remove him as an endorser on the loans. Bradley Discharge Denial. On or around October 25, 2021, Plaintiff submitted an appeal of Nelnet's denial to the Department. Emerson Bradley's Loan Discharge Application: Forgery, attached hereto as Exhibit 3, 7 of 54

6

(noting the date he signed the application).   On December 13, 2021, the Department granted

Plaintiff's appeal and consequently authorized Nelnet to remove Plaintiff as an endorser on his

father's loans.  FSA authorization to remove Plaintiff as endorser, attached hereto as Exhibit 4.

Nelnet did not, however, remove Plaintiff as an endorser on all of his father's loans until December

2022.  In a letter dated January 17, 2023, Nelnet explained all of this to Plaintiff, as well as the

relief granted to Plaintiff:

> Your appeal to the U.S. Department of Education Office of Federal Student Aid
> (FSA) to be removed as the endorser of the federal student loans from Lars Bradley
> was approved effective December 13, 2021, as FSA determined the signature
> samples you provided did not match the wet signatures on the Endorser Addendum,
> and your military history supports you did not sign the loan endorsements.  At that
> time, Nelnet received authorization from FSA to remove you as an endorser on the
> loans.
>
> Upon further review, we determined your name was not removed as an endorser
> from all the loans listed above.  On December 5, 2022, these loans were updated to
> remove you as the endorser.  We also submitted a correction to the consumer
> reporting agencies to remove these loans from your credit report. . . .  You are not
> required to repay any portion of the loans listed above.

Jan. 17, 2023 letter from Nelnet to Emerson Bradley ("Nelnet Grant Letter"), attached

hereto as Exhibit 5.

### III.     The Complaint

Plaintiff filed the instant Complaint on November 9, 2022, after the Department granted

his appeal but before Nelnet effectuated the relief.  The Complaint is a putative class action against

the Department.   It contains allegations about federal student aid fraud and the Department's

inadequate efforts to prevent, detect, and correct that fraud, but it asserts a cause of action under

the Privacy Act.  Plaintiff alleges that "[a]s evidenced by the tens of thousands [of] reports of

identity theft with student loans, Defendant has failed to maintain a system with accurate records

and adequate identity verification protocols," Compl. ¶ 10, allegedly in violation of the Privacy

Act's requirements regarding the maintenance of accurate records.  *See id.* ¶¶ 70-72, 86.  Plaintiff also complains that Defendant's disclosure of inaccurate Student Loan Information to third-party servicers and consumer reporting agencies violates the Privacy Act's prohibition on unauthorized disclosures.  *Id.* ¶¶ 81-83, 86.  Additionally, Plaintiff throws in a failure-to-safeguard-information claim.  *Id.* ¶ 86.

At times, the Complaint broadly alleges that "Defendant violated numerous Privacy Act requirements by instituting policies and procedures that permitted submission and retention of fraudulent and false Student Loan Information which misrepresented that Plaintiff and the class members were liable for federal student loans when in fact Plaintiff and the class members never agreed to such obligations."  *Id.* ¶ 80.  This suggests that the claim is that the Department violated the Privacy Act by merely accepting and maintaining student loan applications that contain information that is later alleged to be fraudulent.  *See also id.* ¶ 9 ("The Department does not even require information to be submitted directly from the obligor on a student loan, as simply anyone can fill out the requisite forms as long as they have the right information available."); ¶ 63 ("These claims challenge the student loan origination process followed by Defendant and Defendant's policies and procedures for maintaining Student Loan Information"); ¶ 74 ("In many instances, Defendant permits submission of student loan applications electronically over an internet portal without engaging in even rudimentary identity verification efforts.").

The Complaint's class definition, however, suggests a much narrower claim.  The Complaint defines the class as all persons "who (a) submitted an identity theft report under penalty of perjury to Defendant within the two years before the filing of this action; (b) where the identity theft report identified one or more direct student loans as resulting from identity theft; [and] (c) where Defendant did not update its information systems to discharge the person from any

obligation on the contested loans within three months of receiving that person's identity theft report." *Id.* ¶ 60. *See also id.* ¶ 23 (alleging that Defendant has violated the Privacy Act "by failing to implement protocols to ensure it obtains student loan application directly information [sic] from the purported applicant or to correct inaccurate information about victims in its information systems *once these victims notify Defendant of their victimization by identity thieves*.") (emphasis added). That suggests that it is only the maintenance of student loan application information three months after the Department has received an allegation that the information is fraudulent that allegedly violates the Privacy Act.

Plaintiff seeks money damages and injunctive relief. He claims that he and the class have been harmed by expending money and time to detect and contest false Student Loan Information and to order credit reports, and by the loss of use and access to credit. *Id.* ¶ 88. Plaintiff further seeks "equitable and injunctive relief." *Id.* Prayer for Relief.

## LEGAL STANDARD

The Department moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. "Under Rule 12(b)(1), 'it is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction' unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction." *Muhammad v. FDIC*, 751 F. Supp. 2d 114, 118 (D.D.C. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (internal citation omitted). Rule 12(b)(1) imposes on a court an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005) (internal citations and punctuation omitted). Thus, in deciding a Rule 12(b)(1) motion, a court may consider materials outside the pleadings. *E.g., Zevallos v. Obama*, 10 F. Supp. 3d 111, 116 (D.D.C. 2014). While a court must accept as true all of the factual

allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, *Delta Air Lines v. Export-Import Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015), those factual allegations receive "closer scrutiny" than they would in the Rule 12(b)(6) context. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, a court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

The Department also moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted), that is, whether the complaint's allegations are sufficient to permit a "reasonable inference that the defendant is liable for the misconduct alleged." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011) (quoting *Iqbal*, 556 U.S. at 678). Therefore, a court "may consider [] the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." *Plummer v. Safeway*, *Inc.*, 934 F. Supp. 2d 191, 195-96 (D.D.C. 2013) (quotation omitted) (alteration in original). It may also consider public records. *Nat'l Treasury Emps. Union v. Whipple*, 636 F. Supp. 2d 63, 77 n.8 (D.D.C. 2009). In this regard, a court "must accept as true all of the allegations contained in a complaint[,]" but need not do the same for legal conclusions. *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

**ARGUMENT**

I.    **PLAINTIFF'S CLAIM FOR EQUITABLE AND INJUNCTIVE RELIEF IS MOOT AND SHOULD THEREFORE BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff has already received all of the equitable relief sought and available under the Privacy Act.  Therefore, his claim for equitable and injunctive relief is moot and should be dismissed.

The doctrines of standing, as well as the related one of mootness, ensure that a case presents an actual, ongoing controversy satisfying the requirements of Article III of the Constitution. *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003).  To meet Article III's standing requirement, a plaintiff must establish that (1) he or she has suffered an "injury in fact"; (2) there is a "causal connection between the injury and the conduct complained of"; and (3) "the injury will be 'redressed by a favorable decision.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).  The mootness doctrine requires that these requirements must be met "at all stages of review, not merely at the time the complaint is filed."  *Arizonans for Official English v. Arizona*, 520 U.S 43, 67 (1997) (citation and internal quotation marks omitted).  A case becomes moot when the plaintiffs "have obtained everything that they could recover from this lawsuit."  *LaRoque v. Holder*, 679 F.3d 905, 909 (D.C. Cir. 2012) (internal quotation marks and modifications omitted).  "A case is moot when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party."  *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (internal quotation marks omitted) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

"[A] Privacy Act plaintiff can only obtain equitable relief . . . to correct inaccurate or improper material contained in a record, or . . . to gain access to a record after the agency denies an inspection request." *Kelley v. Fed. Bureau of Investigation*, 67 F. Supp. 3d 240, 253 (D.D.C. 2014) (citing 5 U.S.C. § 552a(g)(1)(A)-(B)).  The theory of Plaintiff's complaint is that the Endorser Addendums allegedly submitted by Lars Bradley on behalf of Plaintiff were fraudulent and forgeries.  Thus, although the Complaint is vague as to what precise equitable and injunctive relief Plaintiff seeks, it is presumably the removal of Plaintiff as an endorser on his father's student loans such that he is no longer obligated to pay those loans, and notification of such to consumer reporting agencies.  *See* Compl. ¶¶ 44-45, 49-51, 53-57.  But Plaintiff has already received all of that relief—his name was removed as an endorser from his father's loans, a correction was submitted to the consumer reporting agencies asking to remove the loans from Plaintiff's credit report, and Plaintiff was relieved of any obligation to repay any portion of the loans.  Nelnet Grant Letter.  Plaintiff's claim for equitable relief is therefore moot.  *See, e.g., Fletcher v. United States*, No. 11-cv-1943, 2013 WL 5422951, at *1 (D.D.C. Sept. 30, 2013) (holding that a student loan discharge case was moot after the Plaintiff "obtained the only relief sought from the complaint, *i.e.* the discharge of her student loan debt."); *In re Howard*, No. 13-5261, 2014 WL 4628254, at *1 (D.C. Cir. July 14, 2014) ("Any injunctive relief concerning appellant's student loans would be moot, as they have been discharged."); *Chavis v. Garrett*, 419 F. Supp. 3d 24, 33-34 (D.D.C. 2019) (plaintiff's claims moot where housing authority issued her a permanent housing voucher, sent back rent to her landlord, and designated her head of household).

Nor is there any "reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *Philip Morris USA Inc.*, 566 F.3d at 1135 (quotation omitted).  There is no reason to think

that the Department would reinstate Plaintiff's status as an endorser on his father's loans after concluding that, based on a preponderance of the evidence, Plaintiff did not sign the Endorser Addendums, nor does the Complaint suggest any.  In fact, courts have "consistently recognized that where the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior*." Citizens for Resp. & Ethics in Wash. v. Wheeler*, 352 F. Supp. 3d 1, 13 (D.D.C. 2019) (citation omitted).

Furthermore, the voluntary cessation exception to mootness does not apply here.  While the burden of establishing mootness lies with the party asserting that a case is moot, the opposing party bears the burden of showing that an exception applies.  *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n,* 628 F.3d 568, 576 (D.C. Cir. 2010).  "As a general rule, a defendant's 'voluntary cessation of allegedly illegal conduct does not deprive a court of power to hear and determine the case.'"  *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011) (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)).  However, the voluntary cessation exception will not apply, that is, a case will remain moot, if "the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation."  *Leonard v. U.S. Dep't of Def.*, 598 F. App'x 9, 10 (D.C. Cir. 2015) (per curiam) (citation omitted).  Here, the Department granted Plaintiff's appeal of his application to be removed as an endorser on his father's loans almost a year before Plaintiff filed his Complaint.  *See* Nelnet Grant Letter.  While the Complaint may have caused the Department to investigate why the action it authorized Nelnet to take had not been taken, the "voluntary cessation of the challenged activity" was the Department's decision to grant the appeal and discharge Plaintiff from any obligation on his father's loans, which undisputedly happened well in advance of the filing of the Complaint.[2]

_____

[2] Nor does the "inherently transitory" exception to mootness in the class action context apply here.  That exception provides that "where a named plaintiff's claim is inherently transitory, and becomes moot prior

The Court should dismiss Plaintiff's claim for equitable and injunctive relief as moot.

## II.   THE COURT SHOULD DISMISS PLAINTIFF'S DAMAGES CLAIM FOR FAILURE TO STATE A CLAIM

Plaintiff has failed to allege a plausible damages claim under the Privacy Act.  *See* Fed. R. Civ. P. 12(b)(6).  While Plaintiff pleads only one Count in his Complaint asserting a class action, within that Count he throws several alleged Privacy Act violations at the wall to see what sticks: 5 U.S.C. § 552a(b),(e)(1)-(2), (e)(5)-(6) & (e)(10).  Compl. ¶ 86.  For each of these claims, to obtain damages under the Privacy Act, Plaintiff must establish "(1) a violation of a Privacy Act provision, (2) that the [agency's] decision . . . was intentional or willful, (3) that the [violation] caused adverse effects, and (4) that the plaintiff[ ] suffered actual damages."  *Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 8 (D.D.C. 2005) (citing 5 U.S.C. § 552a(g)(1)(D)) (quoting *Albright v. United States*, 732 F.2d 181, 184 (D.C. Cir. 1984)) (alterations in original) (quotations omitted). Subsections 552a(e)(2) and (5) impose an even higher bar on Plaintiff: he must establish not just an "adverse effect," but an "adverse determination."  *Id.* (citing 5 U.S.C. § 552a(g)(1)(C)) (quoting *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002)).  Whether the Complaint is read to be a broad programmatic attack on the Department's fraud prevention and relief mechanisms or to more narrowly challenge the Department's processing speed of discharge

---

to [class] certification, a motion for [class] certification may relate back to the filing of the complaint." *J.D. v. Azar*, 925 F.3d 1291, 1308 (D.C. Cir. 2019) (quotations omitted).  While Plaintiff's Complaint contains class action allegations, there is no motion for class certification to relate back to the filing of the Complaint. In a motion filed on February 3, 2023, Plaintiff requested that the Court enlarge the deadline for Plaintiff to file a motion for class certification, contending that "Plaintiff and the putative class need discovery to adequately prosecute the motion for class certification."  ECF No. 13 at 2.  On February 24, the Court granted that motion and stayed the deadline for Plaintiff to move for class certification until further order of the Court.  Feb. 24, 2023 Minute Order.  Our research has revealed no case applying the inherently transitory exception to mootness prior to the filing of a motion for class certification.

applications based on forgery, Plaintiff does not plausibly plead these requirements, and the Court

should therefore dismiss Plaintiff's damages claim as a matter of law.

### A.   The Complaint Does Not Plausibly Allege Damages Claims For Violations Of The Privacy Act's Requirements That An Agency Maintain Accurate Records

The thrust of the Complaint is that the Department maintained false information contained

in student loan application files.  The Complaint claims that in doing so, the Department violated

four provisions of the Privacy Act regarding requirements for agencies' collection and

maintenance of records contained in systems of records: the requirement that agencies maintain

accurate, relevant, timely, and complete records (5 U.S.C. § 552a(e)(5)); the requirement that

agencies maintain only relevant and necessary information (5 U.S.C. § 552a(e)(1)); the

requirement that agencies collect information, to the greatest extent practicable, directly from the

individual (5 U.S.C. § 552a(e)(2)); and the requirement that agencies review records prior to

dissemination (5 U.S.C. § 552a(e)(6)).  Compl. ¶ 86.  Plaintiff fails to state a claim for damages

under each of these provisions.

### 1.   § 552a(e)(5)

Subsection (e)(5) of the Privacy Act requires an agency to "maintain all records which are

used by the agency in making any determination about any individual with such accuracy . . . as is

reasonably necessary to assure fairness to the individual in the determination."  A claim for

damages under § 552a(e)(5) is brought under subsection (g)(1)(C) of the Privacy Act, not

subsection (g)(1)(D).  *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 660 (D.C. Cir. 1996); *Fendler

v. U.S. Bureau of Prisons*, 846 F.2d 550, 552-53 (9th Cir. 1988).  Subsection (g)(1)(C) provides

for a damages remedy whenever an agency "fails to maintain any record concerning any individual

with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in

any determination relating to the qualifications, character, rights, or opportunities of, or benefits

to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C). Thus, a damages claim for a violation of § 552a(e)(5) requires a plaintiff to plausibly allege (1) he has been aggrieved by an adverse determination; (2) the agency failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the agency reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the agency acted intentionally or willfully in failing to maintain accurate records. *Deters*, 85 F.3d at 657.

Plaintiff has not plausibly alleged that any alleged violation of this subsection was intentional or willful. The Privacy Act waives sovereign immunity of the United States only when a Plaintiff plausibly alleges that the agency willfully failed to "abide by the Act." *Maydak v. United States*, 630 F.3d 166, 180 (D.C. Cir. 2010) (citation omitted). "[V]oluntary actions which might otherwise inadvertently contravene one of the Act's structures" are not sufficient. *Id.* (citation omitted). Alternatively, this standard can be met with plausible allegations that the agency's conduct was "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Id.* at 179 (citation omitted). Ultimately, "[t]he case law construing this requirement sets a high bar." *Thompson*, 400 F. Supp. 2d 1 at 12.

Plaintiff alleges that the Department reported the fraudulent Endorser Addendum information to consumer reporting agencies, and that he was denied credit because of that reporting. *See* Compl. ¶ 39. Thus, the theory goes, the Department's reliance on the false information was the proximate cause of the denial of credit, which is presumably an adverse determination.[3] But there is no allegation in the Complaint that the Department knew the Endorser

---

[3] The only other adverse determination even arguably alleged in the Complaint is that "Defendant" rejected Plaintiff's forgery claim, Compl. at ¶ 54, but Plaintiff does not allege that Nelnet or the Department relied on any inaccurate records in doing so. The rejection of the forgery claim also came after the denial of credit, which is the harm Plaintiff complains about.

Addendums were fraudulent when it reported information from them to consumer reporting agencies. That was before Plaintiff disputed the loans as fraudulent with Nelnet and before the Department could have been aware of Plaintiff's forgery allegation. Compl. ¶¶ 36-43. If the Department did not know the information was false, it did not intentionally or willfully fail to maintain accurate records. *See, e.g. Ramirez v. Dep't of Just.,* 594 F. Supp. 2d 58, 67 (D.D.C. 2009) (noting that it was the plaintiff's responsibility to inform the agency that it had inaccurate records when it was not obvious the agency would have otherwise known of the inaccuracies); *cf.* 15 U.S.C. § 1681s-2(a)(1)(A), (D) (Fair Credit Reporting Act requirement that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate," and defining "reasonable cause to believe that the information is inaccurate" as meaning "having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information."). If the mere receipt by an agency of an application for a government benefit which might later be shown to contain information that is false were enough to intentionally and willfully maintain inaccurate records, every agency that administers a government benefit program would be liable for damages under the Privacy Act every time it ingests an application for the benefit into its record systems, which of course cannot be right.

The Complaint claims that the fraudulent Endorser Addendums bore "multiple hallmarks of identity theft," such as listing a P.O. Box as Plaintiff's address, providing Lars Bradley's email address as Plaintiff's email address, providing a personal phone number for Plaintiff that he never had or used, identifying Plaintiff as working for the U.S. Navy but listing a work phone number not associated with the Navy, listing "N/A" as the name of Plaintiff's employer, and having a 21-

year old son be the endorser on loans for his father.  Compl. ¶¶ 25-32.  But none of those pieces

of information would have indicated on their face that Lars Bradley fraudulently filled out and

signed the endorser addendum for his son.  The Department would not know without further

investigation, for instance, that the personal phone number listed for Plaintiff was one that he never

had or used, or that the work phone number was not associated with the Navy, or that Plaintiff was

not temporarily unemployed.  Nor is there a rule prohibiting an adult son from endorsing a parent's

student loan.  When the Department granted Plaintiff's appeal to be removed as an endorser from

his father's loans, it did so because the signature samples Plaintiff provided did not match the wet

signatures on the Endorser Addendums, and because Plaintiff's military history indicated that he

did not sign the loan endorsements (*see* FSA authorization to remove Plaintiff as endorser; Nelnet

Grant Letter)—neither of which Plaintiff identifies as "hallmarks of identity theft" on the face of

the Endorser Addendums.

Significantly, the Endorser Addendums, referenced in the Complaint (at ¶¶ 25-34), require

the endorser to certify, under penalty of perjury, that the personal information contained in the

form is "true and accurate."  Bradley Endorser Addendums.[4]  The Department also performs a

credit check on all endorsers to make sure they do not have adverse credit histories, and in doing

so verifies their personal identifying information.  Moreover, some of the fraudulent Endorser

Addendums were submitted electronically, meaning that the Department would have confirmed

that the name, date of birth, and Social Security number on those addendums matched what is on

record with the SSA for Plaintiff.  Plaintiff does not claim that his name, date of birth, or Social

Security number were incorrect on the Endorser Addendums, *see* Compl. ¶¶ 25-32, but nonetheless

seems to expect the Department to have immediately recognized the fraud.

---

[4] The Bradley Endorser Addendums may be considered in ruling on Defendant's Rule 12(b)(6) motion
because they are referenced in the Complaint.  *Plummer*, 934 F. Supp. 2d at 195-96.

The Complaint also suggests that the Department should have known that the Endorser Addendums were fraudulent upon receipt because in 2011, the Department's Office of Inspector General alerted the Department to an increasing number of cases involving "fraud rings" that conspire to defraud Title IV programs through distance education programs, and has subsequently reported on student aid fraud "much of it perpetrated by stealing the identities of innocent Americans . . . ." *Id.* ¶¶ 19-23.  But Plaintiff does not allege that he was defrauded by a fraud ring; he alleges that he was defrauded by his father, who presumably had access to certain personal information about his son.  The problem of identity theft through fraud rings is therefore not relevant to Plaintiff's situation.

The Complaint also seems to advance a theory that the Department maintained inaccurate records by not correcting the inaccurate information in the Endorser Addendums immediately after receiving an allegation that the information was fraudulent.  *See id.* ¶¶ 23, 60.  Under subsection (e)(5), an agency "need not keep perfect records, but must act reasonably" to assure accuracy. *Colley v. James*, 254 F. Supp. 3d 45, 67 (D.D.C. 2017).  Once the Department receives a claim of forgery or identity theft, it cannot immediately discharge the complainant's loans—it must first investigate the claim to some extent, making it reasonable to maintain the information for some period of time after the agency receives such a report.  It cannot be an intentional and willful violation of the requirement to maintain accurate records to maintain an allegedly fraudulent record for a mere two months while processing a claim that it is fraudulent, as the Department did here. If that were true, agency inspector general offices and other investigatory offices would incur liability for Privacy Act damages whenever they investigated claims of fraud.

Moreover, the Department's forgery application—a procedure for victims of forgeries and fraudulent loan information to notify the Department of that fraudulent information and correct

their records—enables the Department to balance the need to maintain accurate records with its mandate to approve and disburse federal student loans. This procedure, referenced by Plaintiff in the Complaint and used successfully here, *see* Compl. at ¶¶ 43-45, 53 (referencing and incorporating Emerson Bradley's Loan Discharge Application: Forgery), thus negates any intentional and willful violation of the requirement to maintain accurate records by the Department.

To the extent that Plaintiff complains about alleged injuries received after the Department granted Plaintiff's appeal but before Nelnet finally acted on the Department's instructions to remove Plaintiff as an endorser, those injuries were caused by the administrative error of Nelnet, not the Department. The Department is not liable for civil damages under the Privacy Act for the independent actions of Nelnet, a contractor. The Complaint does not name Nelnet as a defendant and specifically refers to loan servicers such as Nelnet as "third-party" servicers. *Id.* ¶ 81. The Privacy Act waives sovereign immunity only in certain circumstances and is explicit that contractors are considered "employees" of the agency for "the purpose of extending criminal liability to contractors and their employees if they violate certain Privacy Act requirements." *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 71 (D.C. Cir. 2019) (citing 5 U.S.C. § 552a(m)) (emphasis omitted). In the context of sovereign immunity, this means that contractors like Nelnet are considered employees only in this criminal context. *See F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) ("We have said on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text. Any ambiguities in the statutory language are to be construed in favor of immunity[ ] so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." (citations omitted)); 34 C.F.R. § 5b.12(c) ("A contractor and any employee of such contractor shall be considered employees of

the Department only for the purposes of the criminal penalties of the [Privacy] Act, 5 U.S.C. 552a(i).").

## 2. § 552a(e)(1)

5 U.S.C. § 552a(e)(1) requires an agency to "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." "[S]ubsection (e)(1) merely provides a general overall prohibition against the collection and maintenance of information which is irrelevant to the purposes of an agency." *Clarkson v. IRS*, 678 F.2d 1368, 1377 (11th Cir. 1982).

The Complaint's allegations regarding subsection (e)(1) are threadbare. The Complaint does no more than parrot the statute by claiming that the Department violated the Privacy Act by "[m]aintaining Student Loan Information that is not relevant and necessary to accomplish a purpose of the Department designated by statute or executive order of the President." Compl. ¶ 86. Plaintiff does not identify what information the Department maintained that was not relevant and necessary to the Department's purposes. "As no more than 'a formulaic recitation of the elements of a cause of action,' this [§ 552a(e)(1)] allegation cannot survive a motion to dismiss." *Sieverding v. Dep't of Just.*, 693 F. Supp. 2d 93, 106 (D.D.C. 2010) (quoting *Iqbal*, 556 U.S. at 678).

To the extent that Plaintiff's unstated theory is that fraudulent Endorser Addendums cannot be relevant and necessary to the Department's purposes because they are fraudulent, that conflates subsection (e)(1) with subsection (e)(5). Subsection (e)(1) concerns the type of information an agency maintains and whether the information is germane to the agency's purposes; it does not incorporate an accuracy standard. Endorser Addendums are relevant and necessary to the Department's statutory purposes of administering federal student-aid programs under Title IV of

the HEA, 20 U.S.C. § 1070, *et seq*.  To issue loans to borrowers with adverse credit histories, the Department collects personal identifying information from endorsers, via the Endorser Addendum form, to both run a credit check on the endorsers and also hold them accountable should the borrower default on the loan.  *See* 34 C.F.R. § 685.200(b)(5) (referring to 34 C.F.R. § 685.200(c)(2)(viii)); Bradley Endorser Addendums.

  The Complaint also fails to allege how the mere maintenance of the fraudulent Endorser Addendums (assuming that is the irrelevant information) in the Department's files caused him an "adverse effect" as required by 5 U.S.C. § 552a(g)(1)(D).  Rather, Plaintiff alleges that it was the "disclosure of the [fraudulent] Student Loan Information" "to third-party servicers, as well as to consumer reporting agencies" that "had an adverse effect on Plaintiff and the class members" and brings a claim under the Privacy Act's nondisclosure provision.  Compl. ¶¶ 81-85 and below.  Nor does an additional conclusory assertion, devoid of facts, that "Plaintiff and the class members have been harmed . . . by Defendant's violations of the Privacy Act" suffice.  *Id.* ¶ 88; *see also In re Dep't of Veterans Affs. (VA) Data Theft Litig.*, No. MDL1796, 2007 WL 7621261, at *6 (D.D.C. Nov. 16, 2007) (holding that plaintiffs failed to state a claim under § 552a(e)(1) and other provisions because they failed to allege facts that explain how the VA's failure to comply with § 552a(e)(1) had an adverse effect on plaintiffs; the adverse effects alleged by plaintiffs were caused, if at all, by the VA's failure to safeguard their personal information—a different claim); *cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209-12 (2021) (holding that class members whose credit files contained misleading information but were not disseminated to any potential creditors, in class action against a credit reporting agency under the Fair Credit Reporting Act for failing to use reasonable procedures to ensure accuracy of credit files, were not harmed for purposes of Article III standing).  Plaintiff also makes no allegation that the Department intentionally and

willfully failed to "abide by the [a]ct" in this context, itself an independent requirement for any Privacy Act claim. *Maydak*, 630 F.3d at 180. Therefore, Plaintiff does not plausibly allege a damages claim for a violation of this subsection.

### 3. § 552a(e)(2)

Subsection (e)(2) requires an agency to "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs." Compl. ¶ 86. The Endorser Addendum solicits information directly from the subject individual— the person who agrees to be the endorser on the student loan. Plaintiff's unstated theory (the Complaint again only parrots the statute, *see id.* ¶¶ 70, 86) seems to be that the Department does not in fact collect information from the endorser when someone else fills out the Endorser Addendum pretending to be the endorser, as Lars Bradley allegedly did here. Again, Plaintiff conflates subsections (e)(2) and (e)(5) and imposes an impossible burden on agencies—to know that an Endorser Addendum is fraudulent the moment it is submitted to the Department. It is reasonable for the Department to believe that it is collecting information about the endorser from the person who attests under penalty of perjury to be the endorser and whose identity the Department attempts to verify. The Department does not intentionally and willfully violate subsection (e)(2) when it is defrauded because someone other than the endorser completed the Endorser Addendum, and to be sure, the opposite conclusion would stymie the Department's administration of student loan programs.

Indeed, in the situation of a forged Endorser Addendum, there is no other "subject individual" from whom the Department should have collected the information because there is no non-fraudulent endorser, making subsection (e)(2) a poor match for Plaintiff's theories. Most

cases in which subsection (e)(2) is litigated involve situations where the government, in conducting some sort of employment investigation, collected information from someone other than the subject of the investigation. *See, e.g., Waters v. Thornburgh*, 888 F.2d 870 (D.C. Cir. 1989); *Gard v. U.S. Dep't of Educ.,* 789 F. Supp. 2d 96, 109 (D.D.C. 2011). We have identified no case employing subsection (e)(2) in the way Plaintiff apparently seeks to here.

### 4. § 552a(e)(6)

Subsection (e)(6) requires an agency to "prior to disseminating any record about an individual to any person other than an agency, . . . make reasonable efforts to assure that such records are accurate . . . ." 5 U.S.C. § 552a(e)(6). The Complaint again lacks factual elaboration (*see* Compl. ¶¶ 72, 86), but Plaintiff's theory is apparently that the Department did not make reasonable efforts to discover that the Endorser Addendums related to Lars Bradley's student loans were fraudulent before the Department disseminated "this inaccurate Student Loan Information to third-party servicers, as well as to consumer reporting agencies." *Id.* ¶ 81. However, any alleged disclosure of the fraudulent Endorser Addendums occurred before the Department was put on notice that they were fraudulent. *Id*. ¶¶ 36-39 (alleging that it was the denial of credit, because of records pertaining to the fraudulent loans that the Department reported about Plaintiff to consumer reporting agencies, that caused Plaintiff to learn about the fraudulent Endorser Addendums). As discussed above, it was reasonable for the Department to assume the Endorser Addendums associated with Lars Bradley's student loans were valid and accurate before it received and investigated Plaintiff's claim suggesting otherwise. For all these reasons, the Complaint fails to allege that the Department intentionally and willfully violated subsection (e)(6) by not probing the accuracy of the Endorser Addendums before it had any inkling they were fraudulent.

**B.  The Complaint Does Not Plausibly Allege A Damages Claim For Violation Of The Privacy Act's Prohibition on Unauthorized Disclosures**

As noted above, Plaintiff claims that the dissemination of "this inaccurate Student Loan Information to third-party services, as well as to consumer reporting agencies," violates the Privacy Act's prohibition on unlawful disclosure of records.  Compl. ¶¶ 81-85.  The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records . . . except . . . with the prior written consent of [] the individual to whom the record pertains," unless disclosure of the record falls within twelve enumerated exceptions.  5 U.S.C. § 552a(b).  Accordingly, where a plaintiff "cannot establish that disclosure was improper, he cannot, as a matter of law, succeed under the Privacy Act."  *Reed v. Dep't of the Navy*, 910 F. Supp. 2d 32, 41 (D.D.C. 2012).  The requirement that the disclosure was made intentionally and willfully applies to a damages claim for this violation as well.  *See Kelley*, 67 F. Supp. 3d at 254 ("[I]ntentional and willful misconduct is an element that must be pleaded and supported by sufficient facts . . . ." for an unauthorized disclosure claim).

Information about the endorser is disclosed to consumer reporting agencies pursuant to written consent provided by the endorser in signing the Endorser Addendum.  The endorser explicitly consents to the Department investigating the endorser's credit record, which would cover any credit check, and reporting information about the endorser's credit to persons and organizations permitted by law to receive such information.  The language of the Endorser Addendums has varied slightly over the years, and the Endorser Addendums at issue here provided consent to report information about the endorser's "loan status"—so even broader than the endorser's credit—to persons and organizations permitted by law to receive such information.  They further explicitly provided that the endorser understands "that if the borrower becomes delinquent in making payments or defaults on the loan made under the MPN, [the Department]

may report my name to consumer reporting agencies in connection with the delinquent or defaulted loan." Bradley Endorser Addendums, at 2.

The HEA requires the Department to disclose to consumer reporting agencies certain information about outstanding loans, such as the total amount of the loan and the remaining balance, "[f]or the purpose of promoting responsible repayment of loans."  20 U.S.C. § 1080a(a). In addition, the Fair Credit Reporting Act requires that information furnished to consumer reporting agencies be accurate and complete.  15 U.S.C. § 1681s-2.  While 20 U.S.C. § 1080a(a) specifically requires the disclosure of information "concerning student borrowers," information about endorsers concerns student borrowers because endorsers have agreed to repay the borrower's loans if the borrower fails to do so.  Endorsers are also similarly situated to borrowers for purposes of reporting information to consumer reporting agencies, again because they are liable to repay the borrower's loan if the borrower fails to repay it.  To "promot[e] responsible repayment of loans," 20 U.S.C. § 1080a(a), and to make the information about the loan furnished to the consumer reporting agency accurate and complete, the Department is permitted to share information about endorsers' obligations as well.  Plaintiff concedes that "records pertaining to the Fraudulent Loans" were reported about him to consumer reporting agencies.  Compl. ¶ 39.

Thus, the Department had consent to disclose the Endorser Addendum information at issue here.  Again, it was reasonable for the Department to believe that Plaintiff actually gave this consent based on the signed Endorser Addendums, because it did not know that they were forged until after it reported the "records pertaining to the Fraudulent Loans" to consumer reporting agencies (and certainly after it reported those records to Nelnet).  *See id.* ¶¶ 36, 39.  This reasonable belief defeats Plaintiff's claim of a willful or intentional violation.  *Alexander v. FBI*, 691 F. Supp. 2d 182, 191 (D.D.C. 2010) ("this Circuit has said that when an agency discloses records pursuant

26

to its unchallenged regulations, or in response to a request that it justifiably believed to be authorized—as was the case here—the disclosing agency can't have willfully violated the Privacy Act." (citing *Albright*, 732 F.2d at 189)); s*ee also, e.g. Reed*, 910 F. Supp. 2d at 44 (concluding that defendant's reasonable belief that disclosures were justified "based on legal research and consultation with colleagues" defeated a plausible allegation of a willful or intentional violation).

### C. The Complaint Does Not Plausibly Allege A Damages Claim For Violation Of The Privacy Act's Failure To Establish Safeguards Provision

Finally, Plaintiff does not state a plausible claim under § 552a(e)(10)—a section that is normally invoked in the context of data breaches—because he does not allege any harm suffered as a result of a data breach, allege that any such breach occurred, or identify any rule or safeguard that the Department should have implemented but did not.  § 552a(e)(10) requires the Department to "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained."  5 U.S.C. § 552a(e)(10).  "[A] complaint must plausibly allege that the agency's security failures were in flagrant disregard of [their] rights under the Act, were left in place without grounds for believing them to be lawful, or were so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful.  *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d at 63 (citation omitted).  For this reason, Plaintiff must also "identify a rule or safeguard that [the Department] should have established but did not."  *Dick v. Holder*, 67 F. Supp. 3d 167, 186 (D.D.C. 2014) (citation omitted).

The basis of this claim seems to be the allegation that "Defendant permits submission of student loan applications electronically over an internet portal without engaging in even

rudimentary identity verification efforts.  Defendant approves applications for student loans . . . without making any effort to verify the identity of the purported applicants and co-signers."  That allegation is devoid of any supporting facts and is contradicted by the Department's identity verification procedures discussed above, which the Court may take judicial notice of.   Compl. ¶¶ 74-75.  More importantly, Plaintiff's theory of harm is that identity theft *precedes* the submission of the fraudulent loan information to the Department—it is what allows the submission of the fraudulent information—and that the Department fails to detect it, not that the agency fails to protect against the threat of theft of identifying information in its record systems (i.e., a data breach) by instituting adequate physical safeguards of that information, which is what subsection (e)(10) is about.  *See, e.g. In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d at 63 (reviewing that under (e)(10), a plaintiff must allege that the agency's "security failures" exist in "flagrant disregard of [his] rights under the Act." (citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claim for equitable and injunctive relief as moot, and dismiss Plaintiff's damages claim for failure to state a claim upon which relief can be granted.

DATE:  March 8, 2023                             Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Samuel Rebo*
SAMUEL REBO (DC Bar # 1780665)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW

Washington, DC 20005
(202) 514-6582
Samuel.a.rebo@usdoj.gov
*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing Motion to Dismiss and Memorandum in Support of the Motion to Dismiss with the Clerk of the Court through the ECF system on March 8, 2023. This system provided a copy to and effected service of this document on all parties.

<u>/s/ Samuel Rebo</u>
SAMUEL REBO (DC Bar # 1780665)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch